NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10130 |
| Plaintiff-Appellant, | D.C. No. 3:18-cr-00001-MMD-WGC-1 |
| v. | |
| JOEL RALPH TURNBOW; TRACY METHOD, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Submitted April 15, 2020**
San Francisco, California

Before: PAEZ and CLIFTON, Circuit Judges, and HARPOOL,*** District Judge.

The government appeals the district court's grant of Joel Turnbow's motion

to suppress evidence obtained in violation of the Fourth Amendment. Reviewing

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable M. Douglas Harpool, United States District Judge for
the Western District of Missouri, sitting by designation.

de novo the district court's legal conclusions and for clear error its underlying factual findings, *United States v. Gust*, 405 F.3d 797, 799 (9th Cir. 2005), we affirm.

Ample evidence supported the district court's finding that Officer English's decision to impound Turnbow's car was pretextual. *See United States v. Johnson*, 889 F.3d 1120, 1126 (9th Cir. 2018). As the district court explained, the record showed that Officer English's suspicions of illegal activity began the moment he spotted Turnbow's car, and he took numerous steps to justify searching it until he finally settled on an inventory search. Specifically, when Officer English first saw the car, he decided to check the license plate because he believed Tracy Method, the passenger and co-defendant, acted suspiciously. Even after the license plate came back clear, Officer English's suspicion persisted, so he decided to request a warrants check on Turnbow's name and discovered he had an outstanding warrant for his arrest. Officer English also saw that Method was "moving a lot" and suspected she may have concealed an item in the backseat of the car. Because he did not have probable cause to search the car, Officer English asked his supervisor to call a K-9 unit so that he could establish probable cause through a K-9 alert.

When the dog failed to alert, Officer English told Method he was going to impound the car but asked her if he could search her purse before she departed on foot, which he would not have done had he not been looking for incriminating

2

evidence. When she consented, he found a large sum of money in $20 bills.

Officer English also failed to note any of his caretaking concerns in his police

report, which suggested his true motivation to impound the car was to search it for

contraband.

In light of the above findings, the district court inferred that Officer

English's intent from the beginning was to search the car for drugs and only relied

on the inventory search exception once it was clear that there was no other

available means to satisfy the Fourth Amendment requirement. On this record, we

cannot say the district court's factual findings or the inferences it drew were

implausible or unsupported. *See Gust*, 405 F.3d at 799.

Further, we are not persuaded that the district court clearly erred when it

disregarded Officer English's purported reason to impound the car. Although

Officer English testified he was going to impound the car as soon as he confirmed

Turnbow's arrest warrant and that Method's driver's license was suspended, the

district court acted well within its discretion not to credit that testimony. As the

district court noted, Officer English's community caretaking concerns were not

well-founded: it was daylight, the parking lot where the car was parked was not in

a particularly high crime area, and even though the car was not parked in a specific

parking spot, it was not blocking traffic. Further, even though Method did not

have a valid driver's license, Officer English could have left the car in her custody

to arrange for its safekeeping, which would have mitigated Officer English's purported concerns about incurring liability.[1]

We are similarly not persuaded by the government's argument that because Officer English's decision to impound conformed to his standard practice and was supported by his department's policies, he necessarily acted with a dual motive. As a threshold matter, compliance with state or local policy alone "is insufficient to justify an impoundment under the community caretaking exception." *See United States v. Cervantes*, 703 F.3d 1135, 1142 (9th Cir. 2012). Further, considering the facts discussed above, the district court did not clearly err in rejecting Officer English's testimony that he impounded the car to comply with departmental policies. That finding is buttressed by the fact that Officer English failed to note a community caretaking concern or departmental policy in his police report.

**AFFIRMED.**

---

[1] Although Turnbow and Method could not immediately produce proof of insurance, the government cited no local or state law authorizing impoundment under those circumstances. *See United States v. Torres*, 828 F.3d 1113, 1120 (9th Cir. 2016). Further, even if impoundment were authorized under local or state law, the government fails to explain why towing the car would have served a caretaking role, as Method would have been presented with an identical dilemma at the tow yard as at the parking lot.